D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-                    **OPINION & ORDER**
                                                            **03 CR 1342 (SJF)**

AMADEO RODRIGUEZ and CHRISTOPHER
MOORE,

                                  Defendants.
----------------------------------------------------------X
FEUERSTEIN, J.

Before the Court is the motion of defendants Amadeo Rodriguez ("Rodriguez") and Christopher Moore ("Moore" and, together with Rogriguez, "Defendants") seeking a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons set forth herein, Defendants' motion is denied.

I.     Background

On June 18, 2008, both Defendants were convicted of the murder of Giovanni Aguilar (Count 1), the conspiracy to murder MS-13 members (Count 2), the Jay Street shooting (Count 6), the conspiracy to commit the Jay Street shooting (Count 7), related firearms charges (Counts 10, 11, and 12), and the use of an explosive during a felony (Counts 14, 15, and 16). Rodriguez was also convicted of the assaults of John Doe #1 (Count 3) and John Doe #2 (Count 4) at the Freeport Industrial Area, the conspiracy to commit assault at the Freeport Industrial Area (Count

1

5), the Sunrise Highway Shooting (Count 9), a firearm charge related to the Sunrise Highway shooting (Count 13), and the use of an explosive during the Sunrise Highway shooting (Count 17).

On May 28, 2008, during Defendants' trial, the government called Investigator Hector Alicea ("Alicea") as "an expert on the structure and operation of the Nètas street gang." (Tr.,[1] at 1329.) Alicea had not participated in the custodial interrogation or debriefing of any Nètas gang members, nor had he taken part in the investigation of this case. (Gov't Br., at 7.) Following an extensive explanation of Alicea's background and experience with the Nètas culture, and over Defendants' objection that the government had "two cooperators that testified so far that they were members of the Nètas, . . . to their understanding of the structure of the Netas, and the history of it," (Def. Br., at 7-8 (citing Tr., at 1244-46), this Court qualified Alicea as an expert on the structure and operation of the Nètas street gang, then followed by giving a limiting instruction on expert testimony. (Tr., at 1331.) Alicea testified to the history of the Nètas, its expansion, and culture, including the hierarchy, initiation, and chapter affiliations and networks, colors, hand signals, modes of communication utilized by members, and rivalries between the Nètas and other gangs. (Tr., at 1377-80.) Alicea also identified some well-known MS-13 gang members and identified three (3) tattoos as associated with the Nètas gang. (Tr., at 1381-87.) Much of Alicea's testimony was duplicative of (a) a stipulation entered into by the government on Defendants on June 11, 2008, which set forth the facts of United States v. Pimentel, the murder prosecution of "La Madrina," the godmother of the Nètas, and (b) the testimony of four (4) cooperating Nètas gang members.

---

[1] "Tr." refers to the transcript of the trial.

II.  Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure provides, *inter alia*, that "[u]pon the defendant's motion, the court may vacate any judgment, and grant a new trial if the interest of justice so required. Fed. R. Crim. P. Rule 33. A motion for a new trial is committed to the sound discretion of the district court, and its decision will be reversed only for an abuse of discretion. United States v. Wong, 78 F.3d 73, 78 (2d Cir. 1996). The test is "whether it would be a manifest injustice to let the guilty verdict stand," by finding that there is "a real concern that an innocent person may have been convicted." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (quoting United States v. Reed, 875 F.2d 107, 114 (7th Cir. 1989)).

III.  Analysis

A.  The Mejia Decision

Relying on the Second Circuit's decision in United States v. Mejia, 545 F.3d 179 (2d Cir. 2008), Defendants argue that Alicea's testimony at their trial was improperly admitted to prove "that the acts alleged [in the superceding indictment] were done for the purpose of maintaining and increasing [Defendants'] position in the Nètas and that the offenses were committed in furtherance of the enterprise," specifically whether the Nètas gang: (1) was an enterprise; (2) affected interstate commerce; (3) engaged in narcotics trafficking; and (4) engaged in acts of violence. (Def. Br., at 6, 19.) In Mejia, the defendants were convicted of participating in two (2)

3

drive-by shootings in connection with their membership in a criminal enterprise, MS-13. At the Mejia trial, the government presented the testimony of Alicea as an expert witness on MS-13, including its background, history, presence on Long Island, national and international presence, gang colors, hand signs, graffiti use, naming practices, and tattoos. (Def. Br., at 9-10.) Alicea also testified to MS-13's local structure and leadership, division of responsibilities, and membership rules. (Id.) The Second Circuit vacated the convictions and remanded for a new trial, noting that (1) Alicea had testified about facts that were "well within the grasp of the average juror;" (2) some of Alicea's testimony involved "merely repeating information he had read or heard, information he learned from witnesses through custodial interrogations, newspaper articles, police reports, and tape recordings;" and (3) Alicea's testimony contained hearsay statements of cooperating witnesses and confidential informants, in violation of the Confrontation Clause and the Supreme Court's holding in Crawford v. Washington, 541 U.S. 36 (2004). Mejia, 545 F.3d at 194-98.

Nevertheless, the Court in Mejia acknowledged the efficacy of law enforcement officers testifying as expert witnesses where "the officers are equipped by experience and training to speak to the operation, symbols, jargon, and internal structure of criminal organizations." Id., at 190. The Court noted that "officers interact with members of the organizations, study its operations, and exchange information with other officers . . . and thus are able to break through the group's antipathy toward outsiders and gain valuable knowledge about its parochial practices and insular lexicon." Id. A problem arises only if the expert witness (1) testifies to the meaning of conversations, or (2) relies upon hearsay and custodial interrogations in violation of the Federal Rules of Evidence and Confrontation Clause. Id., at 192-93.

B.  Alicea's Testimony Complied with the Federal Rules of Evidence and the Confrontation Clause

Rule 702 of the Federal Rules of Evidence permits an expert witness to testify as to specialized knowledge so long as: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. During Defendants' trial, Alicea based his testimony upon the following: (1) a 1996 narcotics investigation of the Nètas in Copiague and Amityville; (2) his review of gang paraphernalia, documents, and letters recovered pursuant to search warrants; (3) materials about the Nètas from other law enforcement agencies who had conducted training about, and investigations of, the Nètas; (4) internet discussion boards and blogs; and (5) attendance at conferences as an observer and as a speaker. (Tr., at 1322-24, 1328, 1342.) In United States v. Locascio, 6 F.3d 924 (2d Cir. 1993), the Second Circuit noted that:

> the facts that form the basis for an expert's opinion or inferences need not be admissible in evidence if of a type reasonably relied upon by experts in the particular field. Thus, expert witnesses can testify to opinions based on hearsay or other inadmissable evidence if experts in the field reasonably rely on such evidence in forming their opinions. . . . [S]ince there is little question that law enforcement agents routinely and reasonably rely upon such hearsay in the course of their duties[,] . . . [t]he fact that [the expert witness] relied upon inadmissible evidence is therefore less an issue of credibility for the court than an issue of credibility for the jury.

Id. at 938 (internal citations omitted). See also United States v. Mulder, 273 F.3d 91, 102 (2d Cir. 2001) (expert testimony properly relied upon "multiple hearsay"); United States v. Daly, 842 F.2d 1380, 1387 (2d Cir. 1988) (testimony of organized crime expert may be predicated on otherwise inadmissible hearsay); Fed. R. Evid. 703 ("If of a type reasonably relied upon by

5

experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."). Alicea's testimony and power-point presentation were based upon research, sources, and methods recognized as reliable and utilized in cases, and as such, it was properly admitted at trial. Additionally, Alicea did not base any of his testimony on hearsay received during the course of custodial interrogations. Therefore, Defendants' reliance on Crawford is entirely misplaced.

C. Alicea's Testimony was Cumulative, and therefore Harmless

At trial, the four (4) cooperating witnesses, former Nètas gang members, testified in detail as to the Nètas' involvement in assaults, narcotics trafficking, and murder. (See, e.g., Tr., at 408-11, 424-46, 457-87, 792, 794, 816, 833-41, 1496, 2315-19, 2328-29, 2337-44.) Moreover, Defendants stipulated to the facts of the Pimental murders. (Tr., at 3232-3244.) Thus, insofar as Defendants argue that Alicea's testimony was improperly admitted to prove that the Nètas were an enterprise that affected interstate commerce and engaged in narcotics trafficking and acts of violence, the government proved the same through the testimony of the cooperating witnesses and the Pimental stipulation.

An enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct which has an existence separate from the series of acts that constitute racketeering activity. United States v. Turkette, 452 U.S. 576, 583 (1981). An enterprise affects interstate commerce when its members travel across state lines for meetings or

its members engage in narcotics trafficking. See Mejia, 545 F.3d at 203. Several of the cooperating witnesses testified to meetings which drew gang members from multiple states, (Tr., at 393-94, 812-13, 1502, 2324-25), and all of the cooperating witnesses described the narcotics trafficking of the Nètas. (Tr., at 408-11, 792, 794, 1496, 2337-2344.) Thus, even if Alicea's testimony were stricken, the government proved that the Nètas affected interstate commerce through multiple witnesses. Further, through the testimony of the cooperating witnesses, the government proved that the Nètas gang engaged in acts of violence, typically in response to an interaction with the MS-13 gang. (Tr., at 424-46, 457-87, 816, 833-41, 2315-2319, 2328-29.) Contra Mejia, 545 F.3d at 202 (admitting an expert's testimony as to a gang's commission of eighteen (18) murders, in the absence of the government's introduction of direct evidence of the murders, was not harmless error).

Moreover, insofar as Defendants argue that Alicea's testimony was improperly admitted to prove that "the acts alleged were done for the purpose of maintaining and increasing [Defendants'] position in the Nètas and that the offenses were committed in furtherance of the enterprise," (Def. Br., at 6), the cooperating witnesses described how Defendants' acts of violence, including the commission of the charged murder, helped maintain or increase Defendants' position in the gang. (Tr., at 528-29, 836-37, 864-66, 2399-2401.) The cooperating witnesses also testified that the motive for the murder was retaliation against the MS-13 gang for the murder of a Nèta associate, Damian Corrente, and that both Defendants had indicated their intention to "get at" MS-13 gang members. (Tr., at 401-02, 829-33, 847-53, 1530-31, 2402-03.) Thus, assuming Alicea's testimony was in some manner violative of Mejia, it was at most cumulative, and does not warrant a finding of "manifest injustice." See Mejia, 545 F.3d at 200-

01 (noting that expert's "erroneously admitted testimony" was harmless where it was cumulative and the government introduced other relevant evidence to prove the elements to which the expert testified).

D. Conclusion

Based on the foregoing, Defendants have failed to set forth any "manifest injustice" that would warrant a new trial, and as such, Defendant's motion for a new trial is DENIED.

**SO ORDERED.**

Sandra J. Feuerstein
United States District Judge

Dated: April 5, 2010
Central Islip, New York